## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **SYDNEY TALLEY AND LORI ERVIN,** on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br><br>**TZUMI ELECTRONICS LLC,**<br><br>Defendant. | Case No. 1:20-cv-04074-VM |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

### NATURE OF CASE

1.      Consumers, as a result of the modern lifestyle, are increasingly dependent on smart phones, tablets and laptop computers -- portable electronic devices ("PEDs").  PEDs give consumers immediate access to information and instant communication with colleagues, friends, and loved ones.

2.      Like any electronic device, PEDs require power. Consumers must periodically recharge their PEDs which may be difficult if no outlet is available.

3.      To solve that problem, technology companies like Defendant TZUMI Electronics LLC. ("TZUMI") market and sell portable chargers, also known as power banks.

4.      Power banks are small, portable power sources that connect to and charge consumers' PEDs. Power banks can be charged at home and then taken on the go.  For example, a picture of a power bank charging a PED below.



5.      A power bank's ability to charge PEDs is measured in milliampere-hours ("mAh").  A power bank with a higher mAh has an enhanced ability to recharge PEDs compared to a power bank with a lower mAh—in short, it promises to deliver more "juice."

6.      Power banks are not fashion items or status symbols. Consumers do not buy power banks for intangible factors such as the products' looks, styling, or other soft features. Power banks are not usually serviced or repaired once sold; there is no significant relationship between the consumer and the company after purchase.  The main point of buying a power bank is to have the ability to get more power.

7.      Accordingly, consumers prefer and are willing to pay more for power banks with a higher mAh.

8.      Technology companies are aware of this.  One such company is TZUMI. TZUMI markets and sells a variety of models of power banks (which do not materially differ except to the extent they have different mAh ratings) hereafter referred to as the Products ("Products").  The various Product models TZUMI sells include (but are not limited to) the PocketJuice models with mAh representations: 5,000, 8,000, 10,000, 15,000 and 20,000.

Apart from the represented mAh amounts, there is no material difference among TZUMI's

Products. All of the Products are sold using a prominent and false representation that they

have a certain mAh when in fact they all have less.

9.    TZUMI is a key player in the power bank market. The market generates more

than $15 billion in sales each year for the industry as a whole.

10.    For profit and a higher market share, TZUMI exploits consumers' preferences

for power banks with higher mAh. TZUMI intentionally deceives consumers by

misrepresenting the amount of power its Products can transfer to PEDs. TZUMI advertises

its Products as delivering more mAh than its Products are able to provide.

11.    Plaintiffs Sydney Talley and Lori Ervin relied on TZUMI's misrepresentations

when they each bought a Pocket Juice Portable Charger 4000mAh. TZUMI labels the Pocket

Juice as having 4,000 mAh: however the Pocket Juice never could and cannot deliver 4,000

mAh. As a result, Ms. Talley and Ms. Ervin paid a premium for a TZUMI Product that did

not work as represented and warranted.

12.    Ms. Talley and Ms. Ervin bring this proposed class action, individually and on

behalf of the classes of similarly situated consumers, against TZUMI. Ms. Talley and Ms.

Ervin seek redress for TZUMI's unlawful, unjust, unfair, and deceptive practices in

misrepresenting the mAh of the Products and violating state law during the applicable statute

of limitations period.

## PARTIES

13.     Plaintiff Sydney Talley is an individual consumer who, at all times material, bought the Pocket Juice in Spring Hill, Florida

14.     Plaintiff Lori Ervin is an individual consumer who, at all times material, bought the Pocket Juice in Austin, Texas.

15.     Defendant TZUMI ELECTRONICS LLC. is a New York corporation with its principal place of business at 16 E. 34th St., New York, New York 10016.  Defendant markets and distributes the Products from New York throughout the United States.

## JURISDICTION AND VENUE

16.     This Court has general personal jurisdiction over TZUMI because TZUMI is registered to do business and has its principal place of business in New York.  TZUMI has had continuous and systematic general business contacts in New York; and can be said to have reasonably anticipated being hailed into court in New York.

17.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), otherwise known as the Class Action Fairness Act ("CAFA").  In this case, the proposed Plaintiffs' class is comprised of at least 100 members, Lori Ervin and Sydney Talley are citizens of states different from TZUMI, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

18.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the Power Banks, occurred within this District.

4

## DETAILED ALLEGATIONS

**A.    TZUMI Markets Its Products By Emphasizing Their mAh.**

19.    TZUMI manufactures, markets, and distributes for sale nationwide, including through major retailers such as Walmart and Amazon, a number of models of Power Banks. It does so by prominently representing that the Products have a certain mAh. Unfortunately for consumers, testing has shown the amount of mAh the Products actually have is substantially lower than what TZUMI represents.

20.    By deceiving consumers about the Products' mAh, TZUMI is able to sell more of, and charge more for, the Products than it could if they were labeled accurately.  Further, TZUMI is incentivized to mislead consumers to take away market share from competing products, thereby increasing its own sales and profits.

21.    All of the Products are marketed, sold, and advertised in a substantially similar manner, and there is no non-trivial difference amongst the models other than the differences in purported mAh.

22.    TZUMI makes prominent representations about the Products' mAh on the packaging of all of its models.  For example:

  



23.    TZUMI draws attention to its Products' mAh by placing the mAh rating right next to the name of the Products, and by prominently displaying the mAh rating on advertising materials and the product package.

24.    Notably, nothing on the package conveys to consumers that the mAh value prominently advertised is not the mAh delivered to the PEDs.

**B.    The Products Cannot Deliver The Full mAh Amount To PEDs As Advertised.**

25.    TZUMI knew at the time it sold the Products that they were incapable of delivering the mAh it promised

26.     In very basic terms, the Products consist of an internal battery cell (or series of batteries cells) and a circuit board that controls the technology.  The Products' circuit boards convert the internal batteries' charge to a voltage that PEDs, like cell phones, can accept.

27.     To convert and distribute power from the Products to the PEDs, the Products use power from their own internal batteries.  Running the internal circuit board and converting power for charging PEDs is a process that uses as much as 30-40% of the internal cells' power.  In its July 20th letter (ECF No. 16), TZUMI admitted that it bases its mAh representations on the capacity of the internal battery cells, not the Products themselves.  TZUMI's Products are therefore incapable of delivering the full advertised mAh to recharge a consumer's PED.

28.     This conversion and distribution process necessarily reduces the amount of mAh delivered into a PED.

29.     Reasonable consumers such as Ms. Talley and Ms. Ervin read the advertised mAh and would expect and understand that the Products actually have that mAh amount, not that they are incapable of actually delivering the promised mAh.

30.     Because of the process described above, TZUMI knows the Products are technologically incapable of delivering the amount of mAh TZUMI claims in the product name, in advertising for the Product, and on the Products and their packaging.

31.     Ms. Talley and Ms. Ervin hired an experienced and reputable outside laboratory to perform tests on the same model of TZUMI battery they separately purchased (Pocket Juice 4000), as well as on the 20,000 and 6,000 mAh models of other TZUMI Products.  These tests were done in accordance with recognized engineering standards.

7

32.     100% of the TZUMI Products tested do not measure up to TZUMI's claims. The outside lab found that TZUMI's Products consistently failed to provide the mAh TZUMI advertised. Test results for the TZUMI Products the lab tested are below.[1]

| mAh Represented | Actual mAh |
| --- | --- |
| 20,000 | 13,915 & 13,539 |
| 6,000 | 3,690 & 3,894 |
| 4,000 | 2,717 & 2,704 |

**C.    TZUMI Deceived And Made False Representations To Ms. Talley, Ms. Ervin And All Other Consumers About The Pocket Juice 4000's mAh.**

33.     In or about 2017 or 2018, while in Spring Hill, Florida, Ms. Talley saw, in Walmart, TZUMI's mAh representation about the Pocket Juice 4000 and relied on it.

34.     In or about November, 2018, while in Austin, Texas, Ms. Ervin saw, in Walmart, TZUMI's mAh representation about the Pocket Juice 4000 and relied on it.

35.     On TZUMI's package, TZUMI said that the Pocket Juice 4000 had "4000 mAh."

36.     Ms. Talley and Ms. Ervin purchased separately the Pocket Juice 4000.

37.     After purchasing the Pocket Juice 4000, Ms. Talley and Ms. Ervin were disappointed to find they were forced to recharge the Pocket Juice 4000 more often than they expected.

---

[1] The lab ran two tests on each Product: Pocket Juice Model 4674B, 20,000 mAh; Pocket Juice Model 3483B-2, 6,000 mAh and a Pocket Juice Model 5282, 4,000 mAh.

38.     Ms. Talley and Ms. Ervin, like any reasonable consumer and member of the putative classes, would not have purchased the Product, or would have paid less, had they known the truth about its mAh.

39.     Ms. Talley and Ms. Ervin still rely on PEDs daily. Therefore, if TZUMI stopped its deceptive and false mAh representations and if its Products were priced accordingly, both Ms. Talley and Ms. Ervin would be willing to, and in fact, will buy TZUMI Products again.

40.     On June 7, 2019, Ms. Talley's counsel sent TZUMI a letter informing them of the harm caused by TZUMI's deceptive acts.

41.     On June 25, 2019, Ms. Ervin's counsel sent TZUMI a letter informing them of the harm caused by TZUMI's deceptive acts.  On that same date, Ms. Ervin's counsel also sent the letter informing TZUMI of its deceptive acts to the Texas Consumer Protection Division.

42.     TZUMI has not remedied the situation for Ms. Talley or Ms. Ervin or the classes that Ms. Talley and Ms. Ervin represent.

## CLASS ALLEGATIONS

43.     Ms. Talley and Ms. Ervin bring this action pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and similarly situated individuals within certain states, defined as follows:

> **The Multistate Class**. All consumers who purchased the Products in California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, North Carolina, Ohio, Texas and Washington.
>
> Excluded from the Class are any of TZUMI's officers, directors, or employees; officers, directors, or employees of any entity in which  TZUMI currently has or has had a controlling interest; and TZUMI's legal representatives, heirs, successors, and assigns.

44.     Additionally, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Ms. Ervin brings this class action on behalf of herself and all other similarly situated Texas Citizens, defined as follows:

**The Texas Class**. All consumers who purchased the Products in Texas.

Excluded from the Class are any of TZUMI's officers, directors, or employees; officers, directors, or employees of any entity in which  TZUMI currently has or has had a controlling interest; and TZUMI's legal representatives, heirs, successors, and assigns.

45.     Additionally, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, Ms. Talley brings this class action on behalf of herself and all other similarly situated Florida Citizens, defined as follows:

**The Florida Class**. All consumers who purchased the Products in Florida.

Excluded from the Class are any of TZUMI's officers, directors, or employees; officers, directors, or employees of any entity in which  TZUMI currently has or has had a controlling interest; and TZUMI's legal representatives, heirs, successors, and assigns.

46.     The Multistate Class, Texas Class, and Florida Class are referred to collectively as the "Classes."

47.     Ms. Talley and Ms. Ervin reserve the right to later alter the Classes' definitions in any manner allowed by law.

48.     At this time, Ms. Talley and Ms. Ervin do not know the exact number of members of the Classes; however, based on TZUMI's sales, market research, and publicly available information, Ms. Talley and Ms. Ervin believe that the number of members of the Classes are so numerous that joinder of all members is impractical. TZUMI is a major player in the power bank market.

49.     Questions of law and fact common to the members of the Classes that predominate over questions that may affect individual members include:

10

a.  Whether the Products are capable of delivering the mAh TZUMI claims;

b.  Whether TZUMI misrepresented the Products' mAh ratings;

c.  Whether TZUMI's conduct was unfair and/or deceptive;

d.  Whether TZUMI has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for TZUMI to retain the benefits conferred upon TZUMI by Ms. Talley, Ms. Ervin and the Classes;

e.  Whether TZUMI's conduct constitutes a breach of express warranty;

f.  Whether TZUMI violated state consumer protection laws;

g.  Whether Ms. Talley, Ms. Ervin and the Classes have sustained damages and, if so, the proper measure thereof;

h.  Whether Ms. Talley, Ms. Ervin and the Classes are entitled to restitution, and if so, the proper measure thereof; and

i.  Whether TZUMI should be enjoined from continuing to sell the Products as currently labeled.

50.    Ms. Talley's and Ms. Ervin's claims are typical of those of the Classes. Like all members of the Classes, Ms. Talley and Ms. Ervin purchased TZUMI Products bearing the claim that the Product's ability to deliver mAh was greater than it really is.  And like all Class Members, Ms. Talley and Ms. Ervin sustained damages from TZUMI's wrongful conduct.  There is nothing unusual or distinct about Ms. Talley's and Ms. Ervin's claims compared with others who meet the Classes' definitions.

51.    Plaintiffs, Ms. Talley and Ms. Ervin, will fairly and adequately protect the interests of the Classes, and have retained counsel experienced in complex consumer products class actions.  Ms. Talley and Ms. Ervin have no interests which conflict with those of the Classes.

52.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

53.     No members of the Classes have a substantial interest in individually prosecuting a separate action.  The damages for each individual member of the Classes likely will be relatively small compared with the costs of this complex litigation.  Thus, absent a class mechanism, it would be virtually impossible for class members to obtain an effective remedy.

54.     The prerequisites to maintaining a class action for injunctive or equitable relief are met, as TZUMI has acted or refused to act on grounds generally applicable to the members of the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

55.     The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for TZUMI. For example, one court might enjoin TZUMI from selling any Products, whereas another might require label changes.  Additionally, individual actions could be dispositive of the interests of the members of the Classes even where certain members of the Classes are not parties to such actions.

56.     TZUMI's conduct is generally applicable to the Classes as a whole and Ms. Talley and Ms. Ervin seek, inter alia, equitable remedies with respect to the Class.  As such, TZUMI's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

**CAUSES OF ACTION**

**Count I: Violation of Texas Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code § 17.41, *et. seq.*) on Behalf of the Texas Class**

57.     Lori Ervin incorporates by reference and re-alleges herein all paragraphs alleged above.

58.     Under Tex. Bus. & Com. Code § 17.45(4), Ms. Ervin is a "consumer" because she is an individual who sought and purchased goods.

59.     Under Tex. Bus. & Com. Code § 17.45(3), TZUMI is a "person" because it is a corporation.

60.     Under Tex. Bus. & Com. Code § 17.45(1), the TZUMI power bank is a "good" because it is tangible chattel purchased to charge PEDs.

61.     Under Tex. Bus. & Com. Code § 17.45(6) TZUMI is engaged in "trade" and "commerce" because TZUMI advertises, offers for sale, sells, and distributes TZUMI power banks directly and indirectly to citizens of the State of Texas.

62.     TZUMI's representations about the mAh of the Products were material to a reasonable consumer and were likely to affect consumer decisions and conduct.

63.     Indeed, the amount of mAh is the material factor in making a purchasing decision, because the function of the power bank is to provide power, and more is better.

64.     TZUMI has used and employed deceptive acts or practices in the conduct of trade or commerce.

65.     TZUMI's acts and practices were immoral, unethical, oppressive and unscrupulous.

66.     TZUMI's conduct was substantially injurious to consumers. Such conduct has caused and continues to cause substantial economic injury to consumers because consumers would not have paid as high a price for the Products, or bought the products at all, but for TZUMI's false promotion of the Products' mAh.

67.     But for its deceptive mAh representations, TZUMI could not have charged as high of a price as it did and consumers would be willing to pay less.

68.     Ms. Ervin and other Texas Class members have overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

13

69.     TZUMI's conduct does not benefit consumers.  Because reasonable consumers are deceived by TZUMI's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

70.     TZUMI's practices constituted false, misleading, or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.46 because TZUMI:

a.   Represented that the Products have uses, benefits or quantities which they do not have, in violation of Tex. Bus. & Com. Code § 17.46(5);

b.   Represented that the Products are of a particular standard, quality or grade when they are of another, in violation of Tex. Bus. & Com. Code § 17.46 (7);

c.   Advertised the Products with intent not to sell them as advertised, in violation of Tex. Bus. & Com. Code § 17.46(9); and

d.   Failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed, in violation of Tex. Bus. & Com. Code § 17.46(24).

71.     In addition, Plaintiff brings a Tex. Bus. & Com. § 17.50 claim on her behalf and all other Texas class members (as plead below) because Tzumi breached an express warranty.

72.     TZUMI's deceptive practices directly, foreseeably, and proximately caused Ms. Ervin and the Texas Class to suffer ascertainable losses as described in Paragraph 65 above.

73.     Because Defendant knowingly mislabels its Products, pursuant to Tex. Bus. & Com. § 17.50 Plaintiff and the Texas Class seek economic damages, trebled.

14

**Count II: Violation of Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. §
501.201, *et. seq.*) on Behalf of the Florida Class**

74.     Sydney Talley re-alleges and incorporates the preceding paragraphs into this
cause of action and claim for relief.

75.     This cause of action is brought pursuant to the FDUTPA.  The express purpose
of FDUTPA is to "protect the consuming public . . . from those who engage in unfair
methods of competition, or unconscionable, deceptive, or unfair acts or practices in the
conduct of any trade or commerce."  Fla. Stat. § 501.202(2).

76.     Under Fla. Stat. § 501.203(7), Ms. Talley is a "consumer" because she is an
individual who sought and purchased the Products.

77.     Under Fla. Stat. § 501.203(8) TZUMI is engaged in "trade or commerce"
because it advertises, solicits, provides, offers, or distributes by sale the Products.

78.     Defendant conducts a significant amount of trade and commerce in the state of
Florida.

79.     Defendant's unfair and deceptive practices are likely to mislead - and have
misled - consumers acting reasonably under the circumstances and, therefore, violate Section
500.04, Florida Statutes.

80.     As fully alleged above, TZUMI's representations about the mAh of the
Products were material to a reasonable consumer and were likely to affect consumer
decisions and conduct.

81.     TZUMI has used and employed unfair methods of competition and unfair or
deceptive acts or practices in the conduct of trade or commerce.

82.     TZUMI's acts and practices were immoral, unethical, oppressive and
unscrupulous.

83.     TZUMI's conduct was substantially injurious to consumers.  Such conduct has
caused and continues to cause substantial injury to consumers because consumers would not

15

have paid as high a price for the Products, or bought the products at all, but for TZUMI's false promotion of the Products' mAh.

84.     But for its deceptive mAh representations, TZUMI could not have charged as high of a price as it did.

85.     Ms. Talley and other Florida Class members have overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

86.     TZUMI's conduct does not benefit consumers. Because reasonable consumers are deceived by TZUMI's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

87.     TZUMI's practices constituted unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of Fla. Stat. § 501.204(1) that prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

88.     TZUMI's unfair and deceptive practices directly, foreseeably, and proximately caused Ms. Talley and the Florida Class to suffer ascertainable losses as described in Paragraph 82 above.

### Count III: Violation of Various State Consumer Protection Statutes, on Behalf of the Multistate Class

89.     Ms. Talley and Ms. Ervin incorporate by reference and re-allege herein all paragraphs alleged above.

90.     TZUMI is engaged in "trade" and "commerce" when it advertises, distributes and sells the Products to consumers nationwide.

91.     As fully alleged above, TZUMI's representations about the mAh of the Products were material to a reasonable consumer and were likely to affect consumer decisions and conduct.

16

92.     TZUMI has used and employed unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce.

93.     TZUMI's acts and practices were immoral, unethical, oppressive and unscrupulous.

94.     TZUMI's conduct was substantially injurious to consumers.  Such conduct has caused and continues to cause substantial injury to consumers because consumers would not have paid as high a price for the Products, or bought the products at all, but for TZUMI's false promotion of the Products' mAh.

95.     But for its deceptive mAh representations, TZUMI could not have charged as high of a price as it did.

96.     Ms. Talley, Ms. Ervin and the other Multistate Class members have overpaid for the Products, and such injury is not outweighed by any countervailing benefits.

97.     TZUMI's conduct does not benefit consumers.  Because reasonable consumers are deceived by TZUMI's representations of the Products and they were injured as a result, consumers could not have reasonably avoided such injury.

98.     TZUMI's practices constitute unfair competition or unfair, unconscionable, deceptive, or unlawful acts or business practices in violation of at least the following state consumer protection statutes:

     a.  California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*.;

     b.  California Business and Professions Code, Cal. Bus. & Prof. Code § 17200, *et seq.*;

     c.  California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et. seq*.;

     d.  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*.;

     e.  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq*.;

     f.  Massachusetts Regulation of Business Practices for Consumers' Protection Act, Mass. Gen. Laws Ann. ch. 93A, § 1 *et seq*.;

     g.  Michigan Consumer Protection Act, Mich. Comp. Laws § 445.901, *et seq*.;

h.  New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-1, *et seq.*;

i.  New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*;

j.  North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*;

k.  Ohio's Consumers Sales Practices Act, Ohio Rev. Code § 1345.01, *et seq.*;

l.  Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code Ann. §§ 17.41 *et seq.*; and

m.  Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*

99.    TZUMI's unfair and deceptive practices directly, foreseeably, and proximately caused Ms. Talley, Ms. Ervin and the Multistate Class to suffer ascertainable losses as described in Paragraph 93 above.

### Count IV: Breach of Express Warranty, on Behalf of the Classes

100.    Ms. Talley and Ms. Ervin incorporate by reference and re-allege herein all paragraphs alleged above.

101.    TZUMI's representations regarding the Products' mAh constitute affirmations of fact.

102.    TZUMI's representations that the Products' mAh are greater than they really are relates to the goods and became part of the basis of the bargain between TZUMI and purchasers of the Products.

103.    TZUMI's representations -- made in writing on the face of the packaging as to a material term of the transaction -- constituted an express warranty.

104.    Ms. Talley, Ms. Ervin and members of the Classes purchased the Products, believing that they conformed to the express warranties pertaining to the Products' mAh.

105.    TZUMI breached its express warranties about the Products because the Products' actual mAh was lower than TZUMI represented.

106.    As a result of TZUMI's breaches of express warranty, Ms. Talley, Ms. Ervin and the other members of the Classes were damaged in the amount of the purchase price they paid for the Products, or the difference between the value of the Products accepted by Ms. Talley, Ms. Ervin and the putative Class Members and the value of the Products if they had the actual warranted mAh.

107.    Among other things, Ms. Talley, Ms. Ervin and members of the Classes did not receive the benefit of the bargain and have suffered other injuries as detailed above.

108.    Moreover, had Ms. Talley, Ms. Ervin and the members of the Classes known the true facts, they either would not have purchased the Products, or would not have been willing to pay the price TZUMI charged for the Products.

### Count IV: Unjust Enrichment,
### on Behalf of the Classes

109.    Ms. Talley and Ms. Ervin incorporate by reference and re-allege herein all paragraphs alleged above.

110.    Ms. Talley, Ms. Ervin and the members of the Class conferred benefits on TZUMI by purchasing the Products and paying a greater price for them than they would have if TZUMI had truthfully represented the Products' mAh.

111.    TZUMI has knowledge of such benefits.

112.    TZUMI's representations that the Products' mAh is greater than it actually is constitutes an affirmation of fact that is part of the basis of the bargain between TZUMI and purchasers of the Products.

113.    TZUMI made its representations to induce Ms. Talley, Ms. Ervin and the members of the Classes to purchase, purchase more of, or to pay more for the Products than they otherwise would have, and Ms. Talley, Ms. Ervin and the members of the Classes relied on the representations in purchasing the Products.

114.     TZUMI was enriched at the expense of Ms. Talley, Ms. Ervin and the other members of the Classes, thereby creating a quasi-contractual obligation on TZUMI to restore those ill-gotten gains to Ms. Talley and Ms. Ervin and the members of the Classes.

115.     Under the circumstances, it would be against equity and good conscience to permit TZUMI to retain the ill-gotten benefits it has received from Ms. Talley and Ms. Ervin and the other members of the Classes, in light of the fact that the Products were not what TZUMI purported them to be.

116.     TZUMI must make restitution.

117.     Ms. Talley, Ms. Ervin and the Classes are entitled to recover damages and other appropriate relief.

## PRAYER FOR RELIEF

Ms. Talley and Ms. Ervin demand judgment on behalf of themselves and the Classes as follows:

    a.  An order certifying the proposed Classes; appointing Ms. Talley and Ms. Ervin as the representatives of the Classes; and appointing Ms. Talley and Ms. Ervin's undersigned counsel as Class counsel for the Classes;

    b.  A declaration that TZUMI is financially responsible for notifying members of the Classes of the pendency of this suit;

    c.  An order requiring proper, complete, and accurate labeling of the Products;

    d.  Monetary damages, injunctive relief, and statutory damages in the maximum amount provided by law;

    e.  Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

    f.  An order awarding Ms. Talley and Ms. Ervin and the other members of the Classes the reasonable costs and expenses of suit, including their attorneys' fees;

g.  An order awarding Ms. Talley and Ms. Ervin and the other members of the Classes pre- and post-judgment interest in the maximum amount provided by law; and

h.  Any further relief that the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury on all issues.

Date: July 28, 2020                                    Respectfully submitted,

/s/ D. Greg Blankinship

D. Greg Blankinship
**FINKELSTEIN, BLANKINSHIP,**
**FREI-PEARSON & GARBER, LLP**
445 Hamilton Ave, Suite 605
White Plains, NY 10601
Phone: 914-298-3290
Email: gblankinship@fbfglaw.com

/s/ William F. Cash III

William F. Cash III (admitted *pro hac vice*)
Matthew D. Schultz (admitted *pro hac vice*)
Brenton J. Goodman (admitted *pro hac vice*)
**LEVIN, PAPANTONIO, THOMAS,**
**MITCHELL, RAFFERTY & PROCTOR,**
**P.A.**
316 South Baylen Street, Suite 600
Pensacola, FL 32502
Phone: 850-435-7059
Email: bcash@levinlaw.com
Email: mschultz@levinlaw.com
Email:bgoodman@levinlaw.com

*Attorneys for Sydney Talley and Lori Ervin*